FILED - USDC -NH
2021 JUL 27 PH 3:55

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **No. 1:21-cr-21-SM** |
| | ) | |
| **RYDER WINEGAR** | ) | |

### PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the United States of America by its attorney, John J. Farley, Acting United States Attorney for the District of New Hampshire, and the defendant, Ryder Winegar, and the defendant's attorney, Charles Keefe, Esquire, enter into the following Plea Agreement:

1. **The Plea and the Offenses.**

The defendant agrees to plead guilty to each count of the Indictment in this case, which charges him in Counts 1 through 6 with threatening members of Congress, in violation of 18 U.S.C. § 115(a)(1)(B), and in Count 7, with interstate threatening communication, in violation of 18 U.S.C. § 875.

In exchange for the defendant's guilty plea, the United States agrees to the sentencing stipulations identified in Section 6 of this agreement.

2. **The Statute and Elements of the Offenses.**

*Counts 1 through 6: Threatening Members of Congress - 18 U.S.C. § 115(a)(1)(B)*

Title 18, Section 115(a)(1)(B), provides in pertinent part that it is a crime for anyone who:

> [T]hreatens to assault, kidnap, or murder a United States official, a United States Judge, a federal law enforcement officer, or an official whose killing would be a crime under such section, with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of the

- 1 -

performance of official duties."

18 U.S.C. § 115(a)(1)(B).

The defendant understands that the offense has the following elements, each of which the

United States would be required to prove beyond a reasonable doubt at trial:

First, that the defendant threatened to assault, kidnap, or murder a United States official, a
United States judge, a Federal law enforcement officer, or an official whose killing would
be a crime under 18 U.S.C. § 1114; and

Second, with intent to (a) impede, intimidate, or interfere with such official, judge, or law
enforcement officer while he or she was engaged in the performance of official duties, or
(b) to retaliate against such official, judge, or law enforcement officer on account of the
performance of official duties.

*See* 18 U.S.C. § 115(a)(1)(B); *United States v. Stewart*, 420 F.3d 1007, 1015 (9th Cir. 2005)

(reciting elements).   A member of Congress is a "United States official" for purposes of the

statute.   *See, e.g., United States v. Thomas*, 736 F.3d 54 (1st Cir. 2013) (affirming conviction

under § 115(a)(1)(B) for threatening to murder members of Congress).

*Count 7: Interstate Threatening Communications – 18 U.S.C. § 875(c)*

Title 18, United States Code, Section 875(c) provides, in pertinent part:

Whoever transmits in interstate or foreign commerce any communication containing any
threat to kidnap any person or any threat to injure the person of another, shall be fined
under this title or imprisoned not more than five years, or both.

18 U.S.C. § 875(c).

The defendant understands that the offense has the following elements, each of which the

United States would be required to prove beyond a reasonable doubt at trial:

First, that a communication was sent in interstate commerce;

Second, that defendant intended to send, transmit, or make the communication; and

Third, that defendant had the purpose of issuing a threat to kidnap or injure a person or the
knowledge that the communication would be viewed as such a threat.

- 2 -

First Circuit Model Jury Instruction ¶ 4.18.875 (2019 revisions);
http://www.med.uscourts.gov/pdf/crpiilinks.pdf.

### 3. Offense Conduct.

The defendant stipulates and agrees that if this case proceeded to trial, the government would introduce evidence of the following facts, which would prove the elements of the offense beyond a reasonable doubt:

*Count 1*

On December 16, 2020 at approximately 12:50am EST, Winegar, using his phone number ending in -8495, left a voicemail for U.S. Senator 1, then a United States Senator, at the Senator's office in Washington, D.C. The voicemail was subsequently reported to the U.S. Capitol Police ("USCP") later on December 16, 2020 and is transcribed as follows:

Hey, Doug. Uh, this is Ryder Winegar at 603-417-8495. Uh, you better support Donald Trump as your president. There has been massive fraud in this country. And if you don't support it, we're going to drag you out and we're going to hang you by your neck to die. Good luck.

The Defendant threatened U.S. Senator 1 with intent to impede, intimidate, and interfere with the official in performance of his official duties.

*Count 2*

On December 16, 2020 at approximately 12:58am EST, Winegar, again using – his phone number ending in -8495, left a voicemail for U.S. Senator 2, then and currently a United States Senator, at the Senator's office in Washington, D.C. The voicemail was subsequently reported to the USCP later on December 16, 2020 and is transcribed as follows:

Hey, listen, uh, this is Ryder Winegar, I'm a U.S. Navy veteran. You better stand behind Donald Trump or, you know, quite frankly, not only are you not going to get reelected anytime soon, because why would I bother going out to vote for any fucking RINO candidate like yourself? Uh, but also, really, we're going to hang all you motherfuckers. And it really, really, it boils down to two camps. You either support our president, support liberty, and fuck this global homo, uh,

- 3 -

vaccination Jewish agenda, or you're not. In which case we're going to fucking
kill you. Do you understand? Like you can be afraid of being doxxed and be outed
as a racist and all this shit, which nobody really fucking cares about because
there's no consequences, or you can be scared about motherfuckers like me
stringing your ass up. Yeah. So do the right goddamn thing and get behind our
president and save this country and our Constitution or else you're really going to
fucking regret it as the last thought that you have in your stupid little RINO brain.
Get it? So stop being a RINO and fucking line up. You got it? Stupid bitch.

The Defendant threatened U.S. Senator 2 with intent to impede, intimidate, and interfere

with the official in performance of her official duties.

*Count 3*

On December 16, 2020 at approximately 1:04am EST, Winegar, again using his phone

number ending in -8495, left a voicemail for U.S. Representative 1, a member of the U.S. House

of Representatives, at the representative's office in Washington, DC. The voicemail was

subsequently reported to the USCP later on December 16, 2020 and is transcribed as follows:

Hi, I don't usually do this, so I'm not going to be leaving my address or anything
like that, because quite frankly, I'm scared of retribution, but, uh, you know, I've
seen everything going along in the media these days. And quite, quite honestly,
I'm, I'm very scared for our Republic. I think that Tom needs to back our
president, Donald Trump, and recognize that the Democrats and the Democratic
Party and the Chinese communist party have been attacking our country and
attacking our free elections. And so if you don't stand up for this, really, I think,
you know, I'm not only going to have to register as a Republican in the future, but
I might have to come and hang you personally, like until you die, and all of your
aides, including you, who are listening to this right now, like some 24 year old,
uh, from Arizona named Chase or some gay name like that. Do the right thing or
patriots are going to come, and we're going to fucking kill you all. You
understand?

The Defendant threatened U.S. Representative 1 with intent to impede, intimidate, and

interfere with the official in performance of his official duties.

*Count 4*

On December 16, 2020 at approximately 1:05am EST and 1:10am EST, Winegar, again

using his phone number ending in -8495, left two voicemails for U.S. Representative 2, a

- 4 -

member of the United States House of Representatives, at the representative's office in

Washington, DC. The voicemails were subsequently reported to the USCP later on December 16,

2020 and are transcribed as follows:

Call 1: Hey, you cocksucker. How is there a pandemic when 99.9% of people
survive? Huh? It seems like you don't understand what the fuck a pandemic is.
You better get behind Donald Trump or we're going to hang you, and I'm going to
laugh, and I'm going to pee in your face, and I'm going to fuck your ass, you
stupid fucking Democrat, piece of shit, communist [inaudible].

Call 2: Hey fuck face, Trump is your president. If you're not behind this, then
we're going to hang you to die. Do the right thing, or you're going to get caught
being a fucking Communist, like a Chinese Communist Party, or actually, yeah.
[foreign language] We're going to hang you to death. You understand that?
Goodbye.

The Defendant threatened U.S. Representative 2 with intent to impede, intimidate, and

interfere with the official in performance of her official duties.

*Count 5*

On December 16, 2020 at approximately 1:07am EST, Winegar, again using his phone

number ending in -8495, left a voicemail for U.S. Senator 3, a United States Senator, at the

Senator's office in Washington, DC.  The voicemail was subsequently reported to the USCP

later on December 16, 2020 and is transcribed as follows:

Well, I'm actually trying to contact Martha, not, not Mark or whatever the fuck
your answering machine said, but anyway, it's regardless, regardless, uh, you
fucking, you know, just graduated from college, know-nothing piece of shit. You
need to send this voicemail or tally it up to the senators or whatever gay shit you
do. And that's to say, Donald Trump is your president. He's going to be president.
If he's not, there's going to be fucking problems. You understand? And I don't
mean problems as in we're going to be rallying in the streets or burning down
Nike or some shit. Like we're going to come hang you, you specifically. And I
know who you are. Yeah. And when I mean, we, I mean, I mean, like, you know,
like metaphorically, we, but someone's going to do it. Not, not necessarily me. Do
the right thing. Fucking get behind the president, cock sucker.

The Defendant threatened U.S. Senator 3 with intent to with intent to impede, intimidate,

and interfere with the official in performance of his official duties.

Count 6

On December 16, 2020 at approximately 1:22am EST, Winegar, again using his phone

number ending in -8495, left a voicemail for U. S. Representative 3, a member of the U.S. House

of Representatives, at the representative's office in Washington, DC. The voicemail was

subsequently reported to the USCP on December 17, 2020 and is transcribed as follows:

Hey, Greg, I got some advice for you. Here's the advice, Donald Trump is your
president. If you don't get behind him, we're going to hang you until you die. Uh
there's there's no other option. You, there's two roads right now. You can come,
you can keep being a shill for the Chinese communist party. And you know, like
the, uh, the Jewish banking cartel, or you can stand up and do the right thing and
back America's president Donald Trump. Support freedom. Fuck this coronavirus
faggoty nonsense. Or you can continue being a nigger with the rest of your
democratic faggot pomp and faggot communist comrades. And you're going to
hang alongside of him. That goes for all you aides too. You think I'm just an aide,
I'm not going to be hung. No, no, no, no, no, no, no. You're right. You're not
going to be hung, we're just going to execute you summarily because you're not
worth televising. Okay. So fuck you, you pieces of shit.

The Defendant threatened U.S. Representative 3 with intent to impede, intimidate,

and interfere with the official in performance of his official duties.

Count 7

Following defendant's arrest in January 2021, a New Hampshire State Representative

reached out to law enforcement to report having received a threatening email from

rwinegar87@gmail.com, the defendant's email address, on December 14, 2020.  The email

threatened NH State Rep:  "Trump is your President, and he will be for 8 more years. You can

be assured that when the time comes Patriots will pull you from your bed and hang you for your

crimes. . . . Night night commie nigger."  The email was signed by the defendant.

4. Penalties, Special Assessment and Restitution.

Counts 1 through 6:

- 6 -

The defendant understands that the penalties for each violation of 18 U.S.C. § 115 are:

A.      A maximum prison term of 10 years (18 U.S.C. § 115(b)(4));

B.      A maximum fine of $250,000 (18 U.S.C. § 3571); and

C.      A term of supervised release of not more than 3 years (18 U.S.C. § 3583)
        The defendant understands that the defendant's failure to comply with any
        of the conditions of supervised release may result in revocation of
        supervised release, requiring the defendant to serve in prison all or part of
        the term of supervised release, with no credit for time already spent on
        supervised release;

*Count 7:*

The defendant understands that the penalties for the violation of 18 U.S.C. § 875(c) are:

A.      A maximum prison term of 5 years (18 U.S.C. § 875(c));

B.      A maximum fine of $250,000 (18 U.S.C. § 3571); and

C.      A term of supervised release of not more than 3 years (18 U.S.C. § 3583).
        The defendant understands that the defendant's failure to comply with any
        of the conditions of supervised release may result in revocation of
        supervised release, requiring the defendant to serve in prison all or part of
        the term of supervised release, with no credit for time already spent on
        supervised release;

The defendant understands he will face a mandatory special assessment of $700, $100 for

each count of conviction, at or before the time of sentencing (18 U.S.C. § 3013(a)(2)(A))

In addition to the other penalties provided by law, the Court may order him to pay

restitution to the victim(s) of the offense (18 U.S.C. § 3663 or § 3663A).

5.  Sentencing and Application of the Sentencing Guidelines.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case

and that the Court is required to consider the United States Sentencing Guidelines as advisory

guidelines. The defendant further understands that he has no right to withdraw from this Plea

Agreement if the applicable advisory guideline range or his sentence is other than he anticipated.

The defendant also understands that the United States and the United States Probation

Office shall:

A.  Advise the Court of any additional, relevant facts that are presently known
or may subsequently come to their attention;

B.  Respond to questions from the Court;

C.  Correct any inaccuracies in the pre-sentence report;

D.  Respond to any statements made by him or his counsel to a probation
officer or to the Court.

The defendant understands that the United States and the Probation Office may address

the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable

sentencing range under the advisory Sentencing Guidelines that he may have received from any

source is only a prediction and not a promise as to the actual sentencing range under the advisory

Sentencing Guidelines that the Court will adopt.

6. Sentencing Stipulations and Agreements.

Pursuant to Fed. R. Crim. 11(c)(1)(B), the United States and the defendant stipulate and

agree to the following:

(a)  The United States will recommend that the defendant be sentenced at the
bottom of the applicable advisory sentencing guidelines range as
determined by the Court.

(b)  The United States agrees that the enhancement contained in U.S.S.G.
§ 2A6.1(b)(1), regarding any conduct evidencing an intent to carry out the
aforementioned threats, does not apply to defendant's conduct based on all
information presently known to the United States.

- 8 -

The defendant understands that the Court is not bound by the foregoing agreements and, with the aid of a pre-sentence report, the court will determine the facts relevant to sentencing. The defendant also understands that if the Court does not accept any or all of those agreements, such rejection by the Court will not be a basis for the defendant to withdraw his guilty plea.

The defendant understands and agrees that the United States may argue that other sentencing enhancements should be applied in determining the advisory guideline range in this case, and he is permitted to object to them.

The United States and the defendant are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

7.  **Acceptance of Responsibility.**

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the offense. The United States, however, may oppose any adjustment for acceptance of responsibility if the defendant:

A.  Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

B.  Challenges the United States' offer of proof at any time after the plea is entered;

C.  Denies involvement in the offense;

D.  Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

E.   Fails to give complete and accurate information about his financial status to the Probation Office;

F.   Obstructs or attempts to obstruct justice, prior to sentencing;

G.   Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

H.   Fails to appear in court as required;

I.   After signing this Plea Agreement, engages in additional criminal conduct; or

J.   Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any of the reasons listed above, the United States does not recommend that he receive a reduction in his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States in the investigation or prosecution of his own misconduct by timely notifying the United States of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the United States will move, at or before sentencing, to decrease the defendant's base offense level by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

8.   Waiver of Trial Rights and Consequences of Plea.

The defendant understands that he has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent him.   The defendant

- 10 -

also understands that he has the right:

A.    To plead not guilty or to maintain that plea if it has already been made;

B.    To be tried by a jury and, at that trial, to the assistance of counsel;

C.    To confront and cross-examine witnesses;

D.    Not to be compelled to provide testimony that may incriminate him; and

E.    To compulsory process for the attendance of witnesses to testify in his defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the

foregoing rights and that upon the Court's acceptance of the his guilty plea, he will not be

entitled to a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions

about the offense, and if he answers those questions falsely under oath, on the record, and in the

presence of counsel, his answers will be used against him in a prosecution for perjury or making

false statements.

9.   Acknowledgment of Guilt: Voluntariness of Plea.

The defendant understands and acknowledges that he:

A.    Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

B.    Is entering into this Plea Agreement without reliance upon any promise or benefit of any kind except as set forth in this Plea Agreement or revealed to the Court;

C.    Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D.    Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E.    Is completely satisfied with the representation and advice received from his undersigned attorney.

10.   Scope of Agreement.

- 11 -

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority. The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from his guilty plea. The defendant understands such matters are solely within the discretion of the specific non-party government agency involved. The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11.  Collateral Consequences.

The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

The defendant understands that, if he is not a citizen of the United States, his guilty plea to the charged offense will likely result in him being subject to immigration proceedings and removed from the United States by making him deportable, excludable, or inadmissible. The defendant also understands that if he is a naturalized citizen, his guilty plea may result in ending his naturalization, which would likely subject him to immigration proceedings and possible removal from the United States. The defendant understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. The defendant wants and agrees to plead guilty to the charged offense regardless of any immigration consequences of this plea, even if this plea will cause his removal from the United States. The defendant understands that he is bound by his guilty plea regardless of any immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to his guilty

- 12 -

plea and to his sentence based on any immigration consequences, and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

12.   Satisfaction of Federal Criminal Liability; Breach.

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal liability in the District of New Hampshire arising from his participation in the conduct that forms the basis of the indictment in this case. The defendant understands that if, before sentencing, he violates any term or condition of this Plea Agreement, engages in any criminal activity, or fails to appear for sentencing, the United States may consider such conduct to be a breach of the Plea Agreement and may withdraw therefrom.

13.   Waivers.

A.   Appeal.

The defendant understands that he has the right to challenge his guilty plea and/or sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and voluntarily waives his right to challenge on direct appeal:

1.   His guilty plea and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of conviction; and

2.   The sentence imposed by the Court if it is within, or lower than, the guideline range determined by the Court, or if it is imposed pursuant to a minimum mandatory sentence.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

B.   Collateral Review

- 13 -

The defendant understands that he may have the right to challenge his guilty plea and/or

sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255. By

entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to

collaterally challenge:

1.   His guilty plea, except as provided below, and any other aspect of his
     conviction, including, but not limited to, adverse rulings on pretrial
     suppression motion(s) or any other adverse disposition of pretrial motions
     or issues, or claims challenging the constitutionality of the statute of
     conviction; and

2.   The sentence imposed by the Court if it is within, or lower than, the
     guideline range determined by the Court, or if it is imposed pursuant to a
     minimum mandatory sentence.

The defendant's waiver of his right to collateral review does not operate to waive a

collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on

the ground of ineffective assistance of counsel. The defendant's waiver of his right to collateral

review also does not operate to waive a collateral challenge based on new legal principles

enunciated by in Supreme Court or First Circuit case law decided after the date of this Plea

Agreement that have retroactive effect.

C. Freedom of Information and Privacy Acts

The defendant hereby waives all rights, whether asserted directly or through a

representative, to request or receive from any department or agency of the United States any

records pertaining to the investigation or prosecution of the case(s) underlying this Plea

Agreement, including without limitation any records that may be sought under the Freedom of

Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

D. Appeal by the Government

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the

- 14 -

16.    Agreement Provisions Not Severable.

The United States and the defendant understand and agree that if any provision of this

Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and

void and no part of it may be enforced.

JOHN J. FARLEY
Acting United States Attorney

Date: July 27, 2021

By: 

Charles L. Rombeau
NY Bar No. 4326500
Assistant United States Attorney
53 Pleasant Street, 4th Floor
Concord, NH   03301
(603) 225-1552
charles.rombeau@usdoj.gov

The defendant, Ryder Winegar, certifies that he has read this 16-page Plea Agreement
and that he fully understands and accepts its terms.

Date: 6/24/21

Ryder Winegar, Defendant

I have read and explained this 16-page Plea Agreement to the defendant, and he has
advised me that he understands and accepts its terms.

Date: 6/25/21

Charles Keefe, Esquire
Attorney for Ryder Winegar

- 16 -