**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal Case No. 21-CR-21-SM |
|  | : |  |
| v. | : |  |
|  | : |  |
| RYDER WINEGAR | : |  |
|  | : |  |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING REQUEST

The United States of America, by John J. Farley, Acting United States Attorney for the District of New Hampshire, respectfully submits this memorandum in connection with the sentencing Ryder Winegar ("defendant"), scheduled for December 1, 2021. The government opposes defendant's request for a downward variant sentence of time served and instead requests that the Court impose a sentence of 33 months of imprisonment to be followed by 2 years of supervised release.

### I.   INTRODUCTION

On August 6, 2021, defendant pleaded guilty to a seven-count indictment charging him with threatening members of Congress in violation of 18 U.S.C. § 115(a)(1)(B) and interstate threatening communications against a New Hampshire State Representative in violation of 18 U.S.C. § 875(c). The United States Probation Office determined defendant's total combined adjusted offense level to be 23 in its Presentence Report ("PSR") based in large part on adjustments for the number of threats and the fact that victims were government employees who were targeted based on that status. PSR ¶¶ 31, 37. Defendant falls in Criminal History Category I by dint of having no criminal history. After accounting for defendant's acceptance of responsibility, he faces a Guidelines Sentencing Range of 33-41 months imprisonment, a term of supervised release of 1-3 years, and a fine of $15,000 to $150,000. PSR ¶ 84, 88, 94.

In his sentencing memorandum, defendant has requested a downward variant sentence of time served. The government objects to defendant's variance and respectfully requests that the Court impose a bottom of the Guidelines sentence of 33 months' imprisonment. Pursuant to the factors set forth in 18 U.S.C. § 3553(a), the Government believes such a sentence would be appropriate in light of defendant's offense conduct, history and characteristics, and the need for both specific and general deterrence and to promote respect for the law.

## II.  BACKGROUND

On the morning of December 16, 2020, staff members for three different U.S. Representatives and three different U.S. Senators came to work at the United States Capitol. Waiting for them on the office voicemail were the six messages the defendant had left the night before and that serve as the first six charged counts in the indictment. Over the next day or so, each Congressional office reported the threats to the United States Capitol Police ("USCP"). The messages were transcribed as follows:

Call 1 / Count 1: On December 16, 2020 at approximately 12:50am EST, Winegar, using his phone number ending in -8495, left a voicemail for a then-U.S. Senator at his office in Washington, D.C. stating:

> "Hey, Doug. Uh, this is Ryder Winegar at [redacted]-8495. Uh, you better support Donald Trump as your president. There has been massive fraud in this country. And if you don't support it, we're going to drag you out and we're going to hang you by your neck to die. Good luck."

Call 2 / Count 2: On December 16, 2020 at approximately 12:58am EST, Winegar, again using his phone number ending in -8495, left a voicemail for a U.S. Senator at her office in Washington, D.C. stating:

> "Hey, listen, uh, this is Ryder Winegar, I'm a U.S. Navy veteran. You better stand behind Donald Trump or, you know, quite frankly, not only are you not going to get reelected anytime soon, because why would I bother going out to vote for any fucking RINO candidate like yourself? Uh, but also, really, we're going to hang all you motherfuckers. And it really, really, it boils down to two camps. You either support our president, support liberty, and fuck this global homo, uh, vaccination Jewish agenda, or you're not. In which case we're going to fucking kill you. Do you understand? Like you can be afraid of being doxxed and be outed as a racist and all this shit, which nobody really fucking cares about because there's no consequences, or you can be scared about motherfuckers like me stringing your ass up. Yeah. So do the right goddamn thing and get behind our president and save this country and our Constitution or else you're really going to fucking regret it as the last thought that you have in your stupid little RINO brain. Get it? So stop being a RINO and fucking line up. You got it? Stupid bitch."

<u>Call 3 / Count 3:</u>  On December 16, 2020 at approximately 1:04am EST, Winegar, again using his phone number ending in -8495, left a voicemail for a U.S. Representative at his office in Washington, D.C. stating:

> "Hi, I don't usually do this, so I'm not going to be leaving my address or anything like that, because quite frankly, I'm scared of retribution, but, uh, you know, I've seen everything going along in the media these days. And quite, quite honestly, I'm, I'm very scared for our Republic. I think that Tom needs to back our president, Donald Trump, and recognize that the Democrats and the Democratic Party and the Chinese communist party have been attacking our country and attacking our free elections. And so if you don't stand up for this, really, I think, you know, I'm not only going to have to register as a Republican in the future, but I might have to come and hang you personally, like until you die, and all of your aides, including you, who are listening to this right now, like some 24 year old, uh, from Arizona named Chase or some gay name like that. Do the right thing or patriots are going to come, and we're going to fucking kill you all. You understand?"

<u>Calls 4 and 5 / Count 4:</u>  On December 16, 2020 at approximately 1:05am EST and 1:10am EST, Winegar, again using his phone number ending in -8495, left two voicemails for another U.S. Representative at her office in Washington, D.C. stating:

> "Hey, you cocksucker. How is there a pandemic when 99.9% of people survive? Huh? It seems like you don't understand what the fuck a pandemic is. You better get behind Donald Trump or we're going to hang you, and I'm going to laugh, and I'm going

to pee in your face, and I'm going to fuck your ass, you stupid fucking Democrat, piece of shit, communist [inaudible]."

"Hey fuck face, Trump is your president. If you're not behind this, then we're going to hang you to die. Do the right thing, or you're going to get caught being a fucking Communist, like a Chinese Communist Party, or actually, yeah. [foreign language] We're going to hang you to death. You understand that? Goodbye."

<u>Call 6 / Count 5</u>:   On December 16, 2020 at approximately 1:07am EST, Winegar, again using his phone number ending in -8495, left a voicemail for a third U.S. Senator at his office in Washington, D.C., stating:

"Well, I'm actually trying to contact Martha, not, not Mark or whatever the fuck your answering machine said, but anyway, it's regardless, regardless, uh, you fucking, you know, just graduated from college, know-nothing piece of shit. You need to send this voicemail or tally it up to the senators or whatever gay shit you do. And that's to say, Donald Trump is your president. He's going to be president. If he's not, there's going to be fucking problems. You understand? And I don't mean problems as in we're going to be rallying in the streets or burning down Nike or some shit. Like we're going to come hang you, you specifically. And I know who you are. Yeah. And when I mean, we, I mean, I mean, like, you know, like metaphorically, we, but someone's going to do it. Not, not necessarily me. Do the right thing. Fucking get behind the president, cock sucker."

<u>Call 7 / Count 6</u>:   On December 16, 2020 at approximately 1:22am EST, Winegar, again using his phone number ending in -8495, left a voicemail for a third U.S. Representative at his office in Washington, D.C., stating:

"Hey, Greg, I got some advice for you. Here's the advice, Donald Trump is your president. If you don't get behind him, we're going to hang you until you die. Uh there's there's no other option. You, there's two roads right now. You can come, you can keep being a shill for the Chinese communist party. And you know, like the, uh, the Jewish banking cartel, or you can stand up and do the right thing and back America's president Donald Trump. Support freedom. Fuck this coronavirus faggoty nonsense. Or you can continue being a nigger with the rest of your democratic faggot pomp and faggot communist comrades. And you're going to hang alongside of him. That goes for all you aides too. You think I'm just an aide, I'm not going to be hung. No, no, no, no, no, no, no. You're right. You're not going to be hung, we're just going to execute you summarily because you're not worth televising. Okay. So fuck you, you pieces of shit."

Based on his self-identification in the threatening messages, the USCP were able to quickly identify the caller as the defendant. The USCP then travelled to New Hampshire to try and do a knock-and-talk of the defendant at his Amherst home on Sunday, December 20. They approached his home at approximately 2:45pm and rang the front doorbell. Winegar came to the window, saw their credentials and shouted he was "not interested in talking to you; get off my property." The agents left to avoid any further confrontation. The USCP then sought and obtained both a search warrant and arrest warrant on Monday, December 21, for execution with the assistance of the U.S. Marshalls Service ("USMS") on Tuesday, December 22.

When USCP and USMS went to executive the warrants at the defendant's residence in the early morning hours on Tuesday, December 22, they encountered the defendant's wife and children, but not the defendant. The defendant's wife told agents that she had taken the defendant to Logan Airport the day before (Dec. 21) and that he flew to Brazil to look at properties there. She did not know when he was going to return. The wife showed agents an American Express account receipt indicating purchase of a plane ticket posting on Monday, December 21, but provided no additional information. This transaction was later confirmed through American Express records.

On Sunday, January 10, 2021, counsel for the defendant notified the government that the defendant would be returning to the United States the following day, flying into Logan Airport, and that he wished to surrender. USCP and USMS made arrangements to have the defendant arrested at the airport, and he was immediately brought up to New Hampshire. An initial appearance and detention hearing followed on Tuesday, January 12, and defendant was ultimately detained pending trial. Following publicity surrounding the defendant's arrest, the government learned of the e-mailed threat sent by the defendant to a member of the New

Hampshire House of Representatives on December 14, 2020, that serves as the basis for Count 7. The grand jury returned the seven count indictment on February 8, 2021, and defendant entered his plea of guilty on August 6.

### III.   THE APPLICABLE GUIDELINES

Under United States v. Booker, 543 U.S. 220, 245 (2005), the Sentencing Guidelines are merely advisory.  Nonetheless, at sentencing, "district courts are still required to 'begin all sentencing proceedings by correctly calculating the applicable Guidelines range.'"  United States v. Millan-Isaac, 749 F.3d 57, 66 (1st Cir. 2014) (quoting Gall v. United States, 552 U.S. 38, 49 (2007)).  "[C]orrectly calculating the GSR serves an important function; it provides a 'framework or starting point' to guide the exercise of the court's discretion."  Millan-Isaac, 749 F.3d at 66 (quoting Freeman v. United States, 564 U.S. 522, 529 (2011)).

Here, there are no pending objections to the Guidelines calculation contained in the PSR and the parties agree with the applicable Guidelines calculation.  *See* PSR ¶¶ 26-51.  The government respectfully requests the Court adopt the Guidelines analysis contained in the PSR.

### IV.   VARIANCE DISCUSSION & GOVERNMENT RECOMMENDATION

The Court, in fashioning its sentence, must consider the factors set forth in 18 U.S.C. § 3553(a), which provides that the Court, in determining the particular sentence to be imposed, "shall consider":

(1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)   the need for the sentence imposed—

   (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B)   to afford adequate deterrence to criminal conduct;

      (C)      to protect the public from further crimes of the defendant; and

      (D)      to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)      the kinds of sentences available;

(4)      the kinds of sentence and the sentencing range established [in the Sentencing Guidelines];

(5)      any pertinent policy statement [issued by the Sentencing Commission];

(6)      the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)      the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Defendant has filed a variance request seeking a sentence of time served. The government believes a sentence at the bottom of the applicable Guidelines range—33 months here—would be more appropriate here. Such a sentence is justified pursuant to the § 3553(a) factors given the seriousness of the offense, the history and characteristics of defendant, and the need to deter the defendant and others from similar activity while promoting respect for the law.

**1. Seriousness of the Offense.**

The defendant's conduct here is extremely serious. Apparently dissatisfied with the outcome of the 2020 Presidential election, the defendant sought to use threats of murder to intimidate members of Congress from performing their duties. While the defendant did not have any role in the January 6 assault on the U.S. Capitol, the plain language of his threats on December 16 shared a common purpose with those insurrectionists—to intimidate members of Congress into backing then-President Donald Trump's efforts to not accept the results of the

Electoral College's vote on December 14, 2020.  Moreover, his threats of death by hanging were laced with anti-Semitic, racist, misogynistic, and homophobic language in an apparent effort to maximize the shock factor in the recipient and to further intimidate.   Added all up, this is serious conduct that was intended to disrupt the functioning of government at the highest levels and warrants the imposition of a sentence that reflects the gravity of the offenses.

**2.  History and Characteristics of Defendant.**

The PSR and defendant's sentencing submission highlights several factors that warrant consideration by the Court in fashioning an appropriate sentence.  Defendant is a 34 year old U.S. citizen with no prior criminal record.  He served for six years in the United States Navy prior to his honorable discharge in 2015, and has served as a primary caregiver to his two young children in recent years.  The anchors of his family life would ordinarily serve to incentivize a law-abiding life upon release from custody, and may well do so here.  However, it must be mentioned that when approached by law enforcement in December 2020, defendant's initial instinct was to leave that family behind and flee.  Indeed, he left his young family the week of Christmas to seek refuge in Brazil, where he remained for approximately three weeks before returning to the United States.  Whether that decision was aberrational by the defendant bears consideration by the Court in fashioning its sentence.

**3.  Specific and General Deterrence and Promoting Respect for the Law.**

The Government addresses the separately articulated § 3553(a) factors of deterrence, promoting respect for the law, and providing a just punishment in concert.  Here, a sentence of 33 months would "afford adequate deterrence to criminal conduct" both generally and specifically and promote respect for the law.  18 U.S.C. § 3553(a)(2)(B).  The issue of general deterrence is a particularly important factor in cases of this nature where the Court can send a

8

message that deters "others from threatening officials based on their political viewpoint." *United States v. Pratersch*, 808 F. App'x 768, 771 (11th Cir. 2020) (finding guidelines sentence substantively reasonable in threat case). The law clearly forbids using threats of violence against members of Congress in order to influence Congressional action. *See* 18 U.S.C. § 115. A clear message from the Court that individuals who break that law will face real and meaningful consequences is important. The need for the sentence to provide specific deterrence to this particular defendant for this conduct also weighs in favor of the term of incarceration. While the defendant has accepted responsibility by pleading guilty, his remorse for his actions only arose after it became clear he would face consequences for them. A sentence of imprisonment of 33 months would adequately deter the defendant from future criminal conduct while promoting respect for the law.

### V.     THE COURT SHOULD IMPOSE A GUIDELINES FINE

The Guidelines Range fine is between $15,000 and $150,000. PSR ¶ 94. Guidelines section 5E1.2 provides in part that the Court "shall impose a fine in all cases, except where the defendant establishes that he is unable to pay." U.S.S.G. § 5E1.2(a). The defendant has an apparent ability to pay any such fine. PSR ¶¶ 81, 82. The government therefore recommends a fine within the applicable Guidelines range.

## VI. CONCLUSION

For the reasons stated above, the Government respectfully requests the Court deny defendant's downward variance and impose a sentence of 33 months' imprisonment followed by a term of 2 years' supervised release. The government additionally recommends a fine within the Guidelines range. Such a sentence is reasonable, appropriate and not greater than necessary to achieve the purposes of sentencing under 18 U.S.C. § 3553(a).

Respectfully submitted,

JOHN J. FARLEY
Acting United States Attorney

Dated: November 24, 2021

By: /s/ Charles L. Rombeau
Charles L. Rombeau
NY Bar No. 4326500
Assistant United States Attorney
53 Pleasant Street, 4th Floor
Concord, NH 03301
(603) 225-1552